FILED - USDC -NH
2026 SEP 11 PM4:31

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**DANA ALBRECHT,**

**Plaintiff,**

v.

Civil No. 26-cv-738

**PATRICK E. DONOVAN, solely in his official capacities as Chair of the New Hampshire Supreme Court Advisory Committee on Rules and as Senior Associate Justice of the New Hampshire Supreme Court, and his successors in office,**

**ABIGAIL ALBEE, PHILIP D. CROSS, KATHLEEN A. DAVIDSON, ANNE M. EDWARDS, SEAN GILL, SARA S. GREENE, RYAN C. GUPTILL, CHARLES KEEFE, RICHARD LEHMANN, DEREK D. LICK, ROBERT J. LYNN, TERRI PETERSON, JANET SPALDING, CHARLES P.E. STEWART, WILLIAM D. WOODBURY, and WILLIAM WRIGHT, each solely in his or her official capacity as a member of the New Hampshire Supreme Court Advisory Committee on Rules, and their successors in office,**

**TIMOTHY A. GUDAS, solely in his official capacity as Clerk of the New Hampshire Supreme Court and custodian of its case records, and his successors in office,**

| | |
|---|---|
| | ) |
| **GORDON J. MACDONALD, solely in his official capacity as Chief Justice of the New Hampshire Supreme Court, and his successors in office,** | ) |
| | ) |
| **MELISSA B. COUNTWAY, BRYAN K. GOULD, and DANIEL E. WILL, each solely in his or her official capacity as an Associate Justice of the New Hampshire Supreme Court, and their successors in office,** | ) |
| | ) |
| **TINA L. NADEAU, MARK D. ATTORRI, MARTIN P. HONIGBERG, LAWRENCE A. MACLEOD, JR., and JAMES W. KENNEDY, each solely in his or her official capacity as a justice specially assigned to the New Hampshire Supreme Court under RSA 490:3, II in Case Nos. JD-2026-0001 and JD-2026-0003, and their successors in that assignment,** | ) |
| | ) |
| **JESSICA A. KING, solely in her official capacity as General Counsel of the New Hampshire Judicial Branch, and her successors in office,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

This is a civil rights action under 42 U.S.C. § 1983 about access to the records of the New Hampshire Supreme Court. Plaintiff, a member of the public, petitioned that court under its own Rule 12(3) for access to the record of two cases docketed there. The court gave notice of the petition to the parties, invited their responses, directed on its own motion that any response be kept from Plaintiff, and promised to decide whether Plaintiff would receive any response that was filed. It never made that decision. Twenty-five days later, a specially assigned panel denied the petition in a three-paragraph order that made no findings of fact, said nothing about any response, and rested on a different rule – Rule 40, which governs the confidentiality of proceedings before the Judicial Conduct Committee and contains no procedure for deciding a request for the Supreme Court's own records – which the panel held made Rule 12 "not relevant." Eleven days before that order, the Judicial Branch's General Counsel had told a journalist that the same documents were "sealed court records" and that anyone seeking them "must follow the process outlined in Supreme Court Rule 12." Six days after it, the Clerk refused Plaintiff even the docket sheet of another case on the same docket, stating only that he was "not authorized to provide it to you or any non-party," without citing any rule or order. Plaintiff seeks declaratory and injunctive relief under the First and Fourteenth Amendments, and under Part I, Article 8 of the New Hampshire Constitution, requiring that the responses (if any) and the docket sheet be produced or, at a minimum, that their withholding be decided by a reasoned written order with the findings the Constitution requires; and a declaration that Rule 40, as construed to displace the procedure and findings that Rule 12(3) requires, cannot constitutionally be applied to deny access to records in the custody of the Supreme Court.

## PARTIES

1. Plaintiff Dana Albrecht is a resident of Nashua, New Hampshire, proceeds without counsel, and was the petitioner in the Rule 12(3) proceeding described below.

2. Defendant Patrick E. Donovan is the Senior Associate Justice of the New Hampshire Supreme Court and the Chair of the Supreme Court's Advisory Committee on Rules, the body constituted under Rule 51 to review the rules of the New Hampshire courts and to recommend their amendment. He is named solely in his official capacities.

3. Defendants Abigail Albee, Philip D. Cross, Kathleen A. Davidson, Anne M. Edwards, Sean Gill, Sara S. Greene, Ryan C. Guptill, Charles Keefe, Richard Lehmann, Derek D. Lick, Robert J. Lynn, Terri Peterson, Janet Spalding, Charles P.E. Stewart, William D. Woodbury and William Wright are the remaining members of the Advisory Committee on Rules. Each is named solely in his or her official capacity as a member of that committee. Plaintiff acknowledges that the promulgation and amendment of court rules is a legislative function, *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731–34 (1980), and names the committee and its members so that any declaratory judgment concerning Rule 12 and Rule 40 binds the body through which amendments to those rules are reviewed, and for no other relief.

4. Defendant Timothy A. Gudas is the Clerk of the New Hampshire Supreme Court and the custodian of its case records and e-filing system. He signed both orders at issue; he is the officer who, under the court's August 10, 2026 order, would "provide a copy of the response, with or without redactions," to Plaintiff if the court so determined; and on September 10, 2026 he personally refused Plaintiff's request for the docket sheet of Case No. JD-2026-0004. He is named solely in his official capacity, in which he administers access to the court's records.

5. Defendant Gordon J. MacDonald is the Chief Justice of the New Hampshire Supreme Court and, under Part II, Article 73-a of the New Hampshire Constitution, the administrative head of all the courts of the State, who "with the concurrence of a majority of the supreme court justices" makes the

rules governing practice and procedure in those courts. He is named solely in his official capacity, both as a rulemaker (for declaratory relief only) and as the administrative head of the court that holds and controls the records at issue.

6. Defendants Melissa B. Countway, Bryan K. Gould and Daniel E. Will are the Associate Justices of the New Hampshire Supreme Court. Together with Defendants MacDonald and Donovan they hold the rulemaking power conferred by Part II, Article 73-a and, as the court, custody and control of the court's case records under Rule 12. Each is named solely in his or her official capacity.

7. Defendants Tina L. Nadeau, a retired Chief Justice of the New Hampshire Superior Court, and Mark D. Attorri, Martin P. Honigberg, Lawrence A. MacLeod, Jr. and James W. Kennedy, Justices of the New Hampshire Superior Court, were specially assigned under RSA 490:3, II to sit as the New Hampshire Supreme Court in Case Nos. JD-2026-0001 and JD-2026-0003. In that capacity they issued the orders of August 10 and September 4, 2026 described below, including the August 10 directive – issued on the court's own motion, not at any party's request – that any response to Plaintiff's petition be withheld from Plaintiff. Each is named solely in his or her official capacity as a justice so assigned and as a custodian of the records of those cases.

8. Defendant Jessica A. King is the General Counsel of the New Hampshire Judicial Branch. She articulates and administers the Judicial Branch's official position on requests by the public and the press for access to its records, and did so with respect to the records at issue here on August 24, 2026. She is named solely in her official capacity, in which she administers access to the Branch's records and communicates the official position of the branch.

9. Every Defendant is sued for prospective declaratory and injunctive relief only. No damages are sought from any Defendant.

## JURISDICTION AND VENUE

10. This action arises under the First Amendment and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11. This Court has supplemental jurisdiction over Plaintiff's claim under Part I, Article 8 of the New Hampshire Constitution (Count Five) under 28 U.S.C. § 1367, because that claim forms part of the same case or controversy as the federal claims.

12. Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

13. Defendants are public officials of the State of New Hampshire who reside within this District and/or perform their official duties within the State of New Hampshire. This Court has personal jurisdiction over each of them.

14. Venue lies in the District of New Hampshire under 28 U.S.C. § 1391(b) because all Defendants reside in this District and the events giving rise to the claims occurred here.

## FACTS PLEAD

### *The Rules*

15. New Hampshire Supreme Court Rule 12, entitled "Requests for Confidentiality of Case Records; Access to Case Records," governs public access to the case records of the New Hampshire Supreme Court. Section (3) of that rule, entitled "Procedure For Seeking Access To Case Records That Have Been Determined to be Confidential," provides in full:

> (a) A person who is neither a party nor counsel in a case and who seeks access to a case record or portion of a case record that has been determined to be confidential shall file a petition with the court requesting access to the record in question.
>
> (b) Upon receipt of the petition, an order of notice shall be issued to all parties and other persons with standing in the case.

> (c) A single justice of the supreme court or a judicial referee appointed by the court shall examine the case record in question to determine whether there is a basis for nondisclosure.
>
> (d) An order shall be issued setting forth the justice's or referee's ruling on the petition, which shall be made public. In the event that the justice or referee determines that the records are confidential, the order shall include findings of fact and rulings of law that support the decision of nondisclosure.
>
> (e) Within 10 days of the date of the clerk's notice of the justice's or referee's decision, any party or person with standing aggrieved by the decision may file a motion for review by the full court.

16. New Hampshire Supreme Court Rule 40, entitled "Procedural Rules of Committee on Judicial Conduct," governs the Judicial Conduct Committee ("JCC" or "the committee"), a body separate from the Supreme Court, with its own executive secretary, offices and files, that receives and investigates reports of alleged judicial misconduct. Section (3) of Rule 40, entitled "Confidentiality of Proceedings," provides in subsection (a):

> As provided in this section, all proceedings and all information, communications, materials, papers, files, and transcripts, written or oral, received or developed by the committee in the course of its work, shall be confidential. No member of the committee or its staff and no employee of the committee shall disclose such proceedings, information, communications, materials, papers, files, or transcripts, except in the course of official duty and as otherwise authorized in this section.

17. Every operative provision of Rule 40(3) is addressed to the committee: what the committee receives or develops, what the committee's members, staff and employees may disclose, when the committee's file becomes public, and what statements the committee may issue. Rule 40(16), entitled "Public Access to Committee Proceedings and Records," likewise governs inspection of records "maintained by the committee" and "retained by the committee." Rule 40(3)(d) itself provides that the committee's file becomes public at defined stages of a docketed complaint.

18. Nothing in Rule 40 mentions a petition for access to records filed in the Supreme Court, a case docketed in the Supreme Court, or the Supreme Court's own case records. Nothing in Rule 40 describes any procedure by

which a member of the public may·request access to records in the custody of the Supreme Court, by whom such a request is decided, by what standard, or with what findings.

19. Rule 12(3) is the only provision of the Supreme Court's rules that describes a procedure for requesting access to case records in the custody of the Supreme Court that have been determined to be confidential. Rule 12(3) presupposes that the record sought has already "been determined to be confidential"; it does not ask whether a record is confidential, but how a non-party may seek access to a confidential Supreme Court record and what the court must do when it decides that request.

20. Rule 40(3) and Rule 12(3) therefore address different questions – the first, what material of the committee is confidential; the second, how the Supreme Court decides a request for access to its own confidential records – and can be applied together without conflict.

***The JD Docket***

21. Case Nos. JD-2026-0001 and JD-2026-0003, captioned *In re Judicial Conduct Committee Proceeding*, are cases docketed in the New Hampshire Supreme Court and maintained in the Supreme Court's e-filing system. They are not proceedings before the JCC, and their records are not in the sole custody of the JCC.

22. Five cases have been docketed on the Supreme Court's "JD" docket in 2026. According to the Supreme Court's published report on the status of its cases as of June 30, 2026,[1] JD-2026-0001, *In re Judicial Conduct Committee Proceeding*, was filed May 12, 2026 and is sealed, and JD-2026-0002, *Petition of Naseef Bryan*, was filed May 27, 2026 and is public. Since June 30, 2026, three more have been docketed: JD-2026-0003, *In re Judicial Conduct Committee Proceeding*, sealed; JD-2026-0004, whose title has not been made public and whose docket sheet the Clerk has refused to provide (¶¶46–49

1 New Hampshire Supreme Court, *Report on the Status of Cases* (2026 second quarterly report, cases pending as of June 30, 2026), available at https://www.courts.nh.gov/sites/g/files/ehbemt471/files/inline-documents/sonh/2026-second-quarterly-status-report.pdf.

below); and JD-2026-0005, *Petition of Dana Albrecht*, filed September 8, 2026 and public.[2]

23. The JD docket is thus a docket of the Supreme Court on which public and sealed cases sit side by side. A case number beginning "JD" does not make a case a proceeding of the Judicial Conduct Committee, and nothing in Rule 40 refers to the Supreme Court's JD ("Judicial Discipline") docket.

***The Petition and the August 10 Order***

24. On August 10, 2026, Plaintiff filed in the New Hampshire Supreme Court a petition under Rule 12(3) for access to the case record in Case Nos. JD-2026-0001 and JD-2026-0003 ("the Petition"). The Petition was filed on, and appears on, the court's docket.

25. On the same day, August 10, 2026, the Supreme Court, sitting through Defendants Nadeau, Attorri, Honigberg, MacLeod and Kennedy, "all specially assigned under RSA 490:3, II," issued an order of notice on the Petition (Exhibit 1). The order recited that "[i]n accordance with Rule 12(3)(b), this order provides the parties with notice of Dana Albrecht's petition, which is available for review in the court's e-filing system," and set August 20, 2026 as the deadline for "any party" to "file a response to his petition."

26. The August 10 order further directed, on the court's own motion and without any request from any party: "To maintain the confidentiality of the case record until a Rule 12(3)(d) order is issued, any response must *not* be served on or sent to Dana Albrecht. The court will review each response to determine whether the clerk should provide a copy of the response, with or without redactions, to Dana Albrecht." (Exhibit 1, emphasis in original.)

27. The August 10 order was signed by Defendant Gudas as Clerk. Its distribution list was redacted before it was provided to Plaintiff.

28. Under Rule 12 and the New Hampshire Supreme Court's own decisions, the burden of demonstrating that court records should be withheld from the public lies with the party seeking closure or nondisclosure. *In re Union*

2 Case Nos. JD-2026-0002 and JD-2026-0005 are pleaded as background only, so that the reader has the complete list of 2026 JD dockets and which of them are public. JD-2026-0005 is a matter Plaintiff filed on a separate subject; it does not concern the events pleaded here, and no relief is sought with respect to it or to JD-2026-0002.

*Leader Corp.*, 147 N.H. 603, 604 (2002); *Associated Press v. State*, 153 N.H. 120, 124–29 (2005). Plaintiff does not know whether any party filed a response to the Petition by the August 20, 2026 deadline. Either one or more responses were filed, or none was and the court kept the record sealed on its own motion. Because any response was withheld from Plaintiff and the court's later order is silent on the point, Plaintiff cannot know which.

29. No response, if any was filed, has ever been served on, sent to, or otherwise provided to Plaintiff, with or without redactions, and Plaintiff has never been told whether any response exists.

***The Judicial Branch's August 24 Position***

30. Nancy West, publisher of the news organization InDepthNH, made a request to the New Hampshire Judicial Branch, under New Hampshire's Right-to-Know Law (RSA 91-A) and Part I, Article 8 of the New Hampshire Constitution, for "JD 260001 and 260003 and the responses to Dana Albrecht's motion to unseal them."

31. On August 24, 2026, at 5:53 PM, the Judicial Branch, by and through Defendant King as General Counsel, responded to Ms. West in writing (Exhibit 3). The response stated that "per *In re Union Leader Corp.*, 147 N.H. 603 (2002), the Judicial Branch is not subject to RSA chapter 91-A and fulfills its constitutional obligations by providing access to court records. However, the documents you seek are sealed court records and are not available to the public. Should you seek access, you must follow the process outlined in Supreme Court Rule 12."

32. The Judicial Branch (by and through its general counsel) thus took the official position, on August 24, 2026, that the responses to Plaintiff's Petition and the records of Case Nos. JD-2026-0001 and JD-2026-0003 are "court records," and that Rule 12 is the process by which access to them is sought.

***The September 4 Order***

33. On September 4, 2026, the Supreme Court, again sitting through Defendants Nadeau, Attorri, Honigberg, MacLeod and Kennedy, issued a further order on the Petition (Exhibit 2). The order was signed by Defendant Gudas as

Clerk, and its distribution list was redacted before it was provided to Plaintiff.

34. The September 4 order characterized Rule 12 as "a general rule governing access to certain Supreme Court case records, with identified exceptions," and Rule 40 as a rule that "contains a specific section entitled, 'Confidentiality of Proceedings.' Rule 40(3)." Invoking the canon that where one enactment "deals with a part of the same subject in a more detailed way, the latter will be regarded as an exception to the general enactment *where the two conflict*," citing *Bel Air v. New Hampshire Dept. of Health and Human Services*, 154 N.H. 228, 233 (2006) (emphasis added) and *Doe v. N.H. Dep't of Safety*, 160 N.H. 474, 477 (2010), the order concluded: "because Rule 40 specifically governs access to Judicial Conduct Committee proceedings, it controls and the general rule, *i.e.*, Rule 12, governing access to other Supreme Court case records, is not relevant. Accordingly, in accordance with the plain and ordinary language in Rule 40, Mr. Albrecht is not entitled to obtain access to the records in the above-captioned matter."

35. The September 4 order does not identify any conflict between Rule 40 and Rule 12(3), and there is none (¶20 above). It does not identify which "plain and ordinary language in Rule 40" denies a member of the public access to records held by the Supreme Court, and Rule 40 contains no such language.

36. The September 4 order rules that Rule 40 rather than Rule 12 governs. It contains no findings of fact, no determination that any particular record or category of record in Case Nos. JD-2026-0001 and JD-2026-0003 is confidential or why, and no consideration of whether any portion of the record could be disclosed, as Rule 12(3)(d) requires of an order denying access.

37. The September 4 order was issued by the full specially assigned court rather than by "[a] single justice of the supreme court or a judicial referee appointed by the court," as Rule 12(3)(c) contemplates, so that the two-tier structure of Rule 12(3) – a single-justice or referee decision followed by review by the full court under Rule 12(3)(e) – was collapsed into a single decision by the full court.

38. The September 4 order does not mention any response to the Petition, does not determine "whether the clerk should provide a copy of the response, with or without redactions," to Plaintiff, and does not state any reason for withholding any response. No other written order has ever made that determination.

39. The court decided the Petition without Plaintiff knowing whether anything had been filed against it, without Plaintiff seeing any such filing, and without Plaintiff having any opportunity to reply.

40. Between August 24 and September 4, 2026 – a span of eleven days – the Judicial Branch gave two incompatible answers to the question which rule governs a request for access to these records: its General Counsel said Rule 12 was the process to follow, and the Supreme Court said Rule 12 was "not relevant" because of Rule 40. Neither answer identified any language in Rule 40 that governs a request for the Supreme Court's own records.

***Plaintiff's September 4 Inquiry***

41. On September 4, 2026, at 3:40 PM, Plaintiff wrote to Defendant King, with copies to Defendant Gudas among others, quoting the August 24 position and asking: "Is this still the case? Why or why not?" (Exhibit 3.)

42. As of the date of this Complaint, Plaintiff has received no response to that inquiry from Defendant King or from anyone else at the Judicial Branch.

***The Docket Sheet of JD-2026-0004***

43. A docket sheet (in New Hampshire practice, a "docket card") is the court's own index of a case: the case number, title, date of filing, and a list of what has been filed and ordered and when. It is not a filing by any party, and it contains no party's confidential material; arguendo, it may be provided in redacted form.

44. The New Hampshire Supreme Court publishes, every quarter, a report listing every case pending before it by number, title and filing date, including the JD cases, and marks which are sealed (¶22 and note 1 above). The court thus itself treats the existence, number, title and filing date of its cases as public information.

45. Docket sheets of cases in the New Hampshire courts are, in ordinary practice, available to any member of the public on request. Plaintiff is aware of no rule of the Supreme Court, and no order in any case, that makes the docket sheet of a case on the JD docket confidential.

46. On September 10, 2026, at 5:22 PM, Plaintiff wrote to Defendant Gudas, with copies to Defendant King and Deputy Clerk Sherri L. Miscio, requesting "a copy of the Court's public docket card for N.H. Supreme Court Case No. JD-2026-0004," and quoting the Supreme Court's holding that "a party seeking closure or nondisclosure of court records has the burden to demonstrate, with specificity, a sufficiently compelling interest, outweighing the public's right of access." *In re Union Leader Corp.*, 147 N.H. at 604 (Exhibit 4).

47. At 6:24 PM the same day, Defendant Gudas replied, with copies to Defendant King and Deputy Clerk Miscio: "No, I am not authorized to provide it to you or any non-party." (Exhibit 4.)

48. Defendant Gudas identified no rule, order or other authority under which the docket sheet of a case pending in the Supreme Court is withheld from a member of the public, did not say whether any order sealing the docket sheet exists, identified no one who would be "authorized" to provide it, and made no findings.

49. The refusal of September 10, 2026 was an administrative act of the Clerk. It was not the subject of any petition, any order of notice, or any order of the court.

*Continuing Injury*

50. Plaintiff continues to be denied any response filed against the Petition (or any statement whether one exists), continues to be denied any statement of reasons for that denial, continues to be denied the docket sheet of a case docketed in the Supreme Court, and remains subject to Rule 40 as construed by the September 4 order in any future request for access to records held by the Supreme Court. Plaintiff intends to seek access to Supreme Court records in the future, including the records of Case No. JD-2026-0004. The injury is ongoing.

**MATTERS OF LAW PLEAD COMMON TO ALL COUNTS**

51. Plaintiff repeats and re-alleges paragraphs 1 through 50 above.

***Standard of Pleading***

52. A document filed *pro se* is "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

***Rules of Court Have the Force of Law***

53. Part II, Article 73-a of the New Hampshire Constitution provides that the Chief Justice, "with the concurrence of a majority of the supreme court justices," shall "make rules governing the administration of all courts in the state and the practice and procedure to be followed in all such courts," and that "[t]he rules so promulgated shall have the force and effect of law." Rule 12 and Rule 40 are such rules.

***The Capacities in Which Defendants Are Sued***

54. When a state's highest court promulgates or declines to amend rules of general application it acts in a legislative capacity and is immune from suit for that act; but when the same court "has independent enforcement authority of its own" it may be sued for prospective relief "just as other enforcement officers and agencies" may. *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731–37 (1980). Judicial immunity attaches to judicial acts, not to "administrative, executive, or legislative functions." *Forrester v. White*, 484 U.S. 219, 227–29 (1988).

55. In this Circuit, whether a judge is a proper defendant in a suit for prospective relief turns on whether the judge acts as a neutral adjudicator of a dispute between others, or instead as an enforcer or administrator of the challenged rule or practice. *In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17, 21–25 (1st Cir. 1982); *see Allen v. DeBello*, 861 F.3d 433, 439–44 (3d Cir. 2017) (applying the *In re Justices* test; judges who decided custody motions

between private parties were adjudicators and not proper defendants). A judge who initiates the challenged action, or who administers a program or a body of records, is not a neutral adjudicator as to that action. *In re Justices*, 695 F.2d at 22–23.

56. The Supreme Court and its Clerk are the custodians of the court's own case records. In deciding whether a member of the public may see those records, the court is not a neutral arbiter between adverse litigants; it is the holder of the records deciding whether to release what it holds. The August 10 directive that any response be withheld from Plaintiff was issued by the court on its own motion, at no party's request. The September 10 refusal of a docket sheet was an administrative act of the Clerk. Plaintiff sues the Clerk, the justices, and the General Counsel in that custodial and administrative capacity, which is the capacity in which the Virginia Supreme Court was held amenable to prospective relief in *Consumers Union*, 446 U.S. at 736, and not for the adjudication of any dispute between others.

57. The Advisory Committee on Rules and the justices in their rulemaking capacity are named for declaratory relief only, so that any declaration concerning Rule 12 and Rule 40 binds the bodies through which those rules are amended; Plaintiff seeks no injunction against any Defendant for any legislative act.

58. 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiff seeks declaratory relief in the first instance, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 33 (2008) ("Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction.") (citing *Steffel v. Thompson*, 415 U.S. 452 (1974)), and seeks injunctive relief against any Defendant acting in a judicial capacity only if a declaratory decree is violated or declaratory relief is unavailable. The maintenance of, and administration of access to, the court's records by the Clerk is not a judicial act, and prospective relief against a judicial officer for non-judicial acts is not barred by judicial immunity. *Pulliam v. Allen*, 466 U.S. 522 (1984); *Forrester*, 484 U.S. at 229–30.

***This Action Is Not an Appeal from the September 4 Order***

59. The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). A plaintiff who "does not challenge the adverse [state-court] decisions themselves; instead, he targets as unconstitutional the ... statute they authoritatively construed," is not barred. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983) (general challenge to the constitutionality of a rule promulgated by a state's highest court is within the district court's jurisdiction).

60. "Four requirements must be met in order for Rooker-Feldman to bar suit: '(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.'" *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017). Indeed, "the doctrine has narrow applicability. Rooker-Feldman does not bar suits that challenge actions or injuries underlying state court decisions – and especially those that predate entry of a state court decision – rather than the decisions themselves." *Id.*

61. Plaintiff does not ask this Court to review or reject the September 4 order. Plaintiff challenges (a) Rule 40 as the Supreme Court has authoritatively construed it, as a rule that displaces the procedure and findings Rule 12(3) requires; (b) the practice of deciding a Rule 12(3) petition on submissions withheld from the petitioner, without findings, which will govern every future petition unless declared unconstitutional; (c) the Clerk's administrative refusal of a docket sheet on September 10, 2026, which post-dates the September 4 order and was the subject of no order of any court; and (d) the continuing withholding, by the Clerk as custodian, of any response to the Petition without any determination – promised on August 10 and never made – whether it may be provided. None of these asks this Court to hold that the September 4 order was wrongly decided.

***The First Amendment Right of Access to Court Records and Docket Sheets***

62. The First Amendment guarantees the public and the press a qualified right of access to judicial proceedings and records. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982). The right attaches where the proceeding or record has historically been open to the public and where public access plays a significant positive role in the functioning of the process in question. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9 (1986).

63. Where the right attaches, the presumption of openness "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984); *Press-Enterprise II*, 478 U.S. at 13–14.

64. "[T]he press and public possess a qualified First Amendment right of access to docket sheets," which "provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment"; without open docket sheets, "a reviewing court cannot ascertain whether judicial sealing orders exist." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 86, 93–96 (2d Cir. 2004). Where docket sheets have been withheld administratively rather than by judicial order, the court administrators who hold them are proper defendants with authority to provide them. *Id.* at 86, 100–02.

65. Independently of the First Amendment, the courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). The First Circuit recognizes that common-law right as to materials on which a court relies in determining the litigants' substantive rights, while distinguishing it from the constitutional right. *United States v. Kravetz*, 706 F.3d 47, 52–58 (1st Cir. 2013).

66. The confidentiality of a judicial-conduct body's own investigative file, before that body has recommended discipline, has been upheld against a First Amendment challenge. *First Amendment Coalition v. Judicial Inquiry &*

*Review Board*, 784 F.2d 467, 472–77 (3d Cir. 1986) (en banc). That decision concerned the board's own records, protected by an express provision of the Pennsylvania Constitution, and analogized the board to a grand jury. It did not concern, and does not govern, the records of a petition for access filed on a state supreme court's own docket, the responses to such a petition, or that court's docket sheets – records created for and by the court's adjudication of a request made to it, in a State whose constitution provides that the public's right of access to governmental proceedings and records "shall not be unreasonably restricted." Part I, Article 8.

67. A petition for access to court records, and any response filed in opposition to it, are judicial records of the court in which they are filed. Such petitions are filed on the public docket; the orders deciding them are, by Rule 12(3)(d), "made public"; and the court's own status report lists the JD cases by number, title and filing date. Experience and logic both support public access to such records and to the docket sheets that index them.

***Procedural Due Process***

68. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). A decisionmaker must state "the reasons for his determination" and "the evidence he relied on." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

69. The interest of which Plaintiff was deprived without process is the qualified First Amendment and common-law right of access described above, a right that may be overridden only on the basis of findings. *Press-Enterprise I*, 464 U.S. at 510. In the alternative, Rule 12(3)(d)'s command that an order denying access "shall include findings of fact and rulings of law that support the decision of nondisclosure" is explicitly mandatory language limiting official discretion. *See* *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 462–63 (1989).

70. An opportunity to be heard is not meaningful if the tribunal decides on the basis of submissions the party has never seen, has not been told exist, and cannot answer. Where a submission opposing a petition contains material that is itself confidential, due process is satisfied by providing the non-confidential portions, or a redacted copy, or at minimum a statement that a submission was made, what was withheld, and why. Plaintiff received none of these.

***Part I, Article 8 of the New Hampshire Constitution***

71. Part I, Article 8 of the New Hampshire Constitution provides that "all the magistrates and officers of government are [the people's] substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted."

72. The New Hampshire Supreme Court has held that "[t]he right to open courtrooms and access to court records related to court proceedings is firmly supported by New Hampshire practice and common law principles, Part I, Articles 8 and 22 of our State Constitution and our guidelines for public access," and that "a party seeking closure or nondisclosure of court records has the burden to demonstrate, with specificity, a sufficiently compelling interest, outweighing the public's right of access," *In re Union Leader Corp.*, 147 N.H. 603, 604 (2002); and that court records may be sealed only upon a determination, supported by specific findings, that a sufficiently compelling interest outweighs the public's right of access and that no reasonable alternative to nondisclosure exists. *Associated Press v. State of New Hampshire*, 153 N.H. 120, 124–29 (2005).

***Vagueness (Pleaded in the Alternative)***

73. Vagueness doctrine "rests on the twin constitutional pillars of due process and separation of powers." *United States v. Davis*, 588 U.S. 445, 451 (2019); *see also* *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018). An enactment is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United*

*States v. Williams*, 553 U.S. 285, 304 (2008); *McCoy v. Town of Pittsfield*, 59 F.4th 497, 509 (1st Cir. 2023). An enactment "authorizes an impermissible degree of enforcement discretion – and is therefore void for vagueness – where it fails to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement." *Frese v. Formella*, 53 F.4th 1, 7 (1st Cir. 2022) (quoting *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 410 (D.C. Cir. 2017)). The degree of vagueness tolerated depends on the nature of the enactment and the consequences of its application, and "a more stringent vagueness test should apply" where the enactment touches rights protected by the First Amendment. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

74. Plaintiff pleads vagueness in the alternative. Plaintiff's primary contention is that Rule 40, properly read, does not govern access to the Supreme Court's own records at all (¶¶17–20 above); Plaintiff contends in the alternative that if Rule 40 does govern such access, as the September 4 order held, then it supplies no procedure, no decisionmaker, no standard and no findings requirement, and a rule that the Judicial Branch's own General Counsel and its highest court read oppositely within eleven days (¶40 above), and under which the Clerk withholds a docket sheet without citing any rule (¶¶47–48 above), authorizes arbitrary application.

## CAUSES OF ACTION

### COUNT ONE

*First Amendment and Common-Law Right of Access – The Responses to the Petition*

75. Plaintiff repeats and re-alleges paragraphs 1 through 74 above.

76. Any response filed in opposition to the Petition is a judicial record of the New Hampshire Supreme Court to which the qualified First Amendment and common-law right of access attaches.

77. Defendants have withheld any such response from Plaintiff, and have withheld even the fact whether any exists, without articulating any overriding interest, without findings "specific enough that a reviewing court can determine whether the closure order was properly entered," *Press-Enterprise I*, 464 U.S. at 510, and without making the determination the court itself promised on August 10, 2026. The Clerk, as custodian, continues to withhold them.

78. Defendants have thereby violated, and continue to violate, Plaintiff's rights under the First Amendment, as incorporated against the States by the Fourteenth Amendment, and at common law.

79. Plaintiff seeks a declaration so finding, and an order directing the Clerk to provide Plaintiff any response filed in opposition to the Petition, in full or with redactions of any portion that has been determined to be confidential on the basis of findings, or, in the alternative, directing that a written determination issue stating whether any response was filed, what if anything is withheld, the interest served by withholding it, and the findings supporting that determination.

**COUNT TWO**

*First Amendment and Common-Law Right of Access – The Docket Sheet of Case No. JD-2026-0004*

80. Plaintiff repeats and re-alleges paragraphs 1 through 79 above.

81. The docket sheet of Case No. JD-2026-0004 is a judicial record of the New Hampshire Supreme Court to which the qualified First Amendment right of access attaches, *Hartford Courant*, 380 F.3d at 93–96, as does the common-law right of access.

82. On September 10, 2026, Defendant Gudas, as Clerk, refused to provide the docket sheet to Plaintiff "or any non-party," citing no rule, no order and no interest, and making no findings. Upon information and belief, no order of any court seals the docket sheet of Case No. JD-2026-0004; if any such order exists, it was entered without notice, without findings, and without any opportunity for the public to be heard.

83. The refusal was an administrative act of the Clerk, post-dates any order of the Supreme Court concerning Plaintiff, and was not the subject of any judicial decision.

84. Defendant Gudas has thereby violated, and continues to violate, Plaintiff's rights under the First Amendment, as incorporated against the States by the Fourteenth Amendment, and at common law.

85. Plaintiff seeks a declaration so finding and an order directing the Clerk to provide the docket sheet of Case No. JD-2026-0004 to Plaintiff or, if any order sealing it exists, to identify that order and provide the docket sheet with only such redactions as that order, supported by findings, requires.

**COUNT THREE**

*Fourteenth Amendment – Procedural Due Process – Decision on Undisclosed Submissions Without Findings*

86. Plaintiff repeats and re-alleges paragraphs 1 through 85 above.

87. Plaintiff, as the petitioner who initiated the Rule 12(3) proceeding, was a party to that proceeding and held a protected interest in the qualified right of access described above, which could be overridden only on the basis of findings.

88. The Supreme Court decided the Petition under a procedure in which any submission opposing the Petition was, by the court's own directive, withheld from the petitioner; the petitioner was not told whether any submission existed; the petitioner had no opportunity to reply; and the resulting order contained no findings and no statement of what, if anything, had been withheld or why. That procedure denied Plaintiff a meaningful opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment.

89. The same procedure will govern every future petition Plaintiff files under Rule 12(3), including any petition for access to the records of Case No. JD-2026-0004, unless declared unconstitutional.

90. Plaintiff seeks a declaration that the Due Process Clause requires that a petitioner under Rule 12(3) be provided any submission opposing the

petition, in full or in redacted form, or at minimum a statement that a submission was made and of what was withheld and why, together with a written decision containing findings; and corresponding prospective injunctive relief to the extent 42 U.S.C. § 1983 permits.

**COUNT FOUR**

*Fourteenth and First Amendments – Rule 40 as Construed to Displace Rule 12(3) Authorizes Standardless Denial of Access; in the Alternative, Rule 40 Is Void for Vagueness*

91. Plaintiff repeats and re-alleges paragraphs 1 through 90 above.

92. Proceedings before the JCC under Rule 40, and the files in the custody of the JCC, are entirely separate from case records docketed in and adjudicated by the New Hampshire Supreme Court. The Supreme Court's JD docket, on which Case Nos. JD-2026-0001 and JD-2026-0003 sit, also carries public petitions by named individuals (¶¶22–23 above); it is a docket of the Supreme Court, not of the committee.

93. Nothing in Rule 40 describes any process for requesting access to court records in the custody of the New Hampshire Supreme Court. Every access provision of Rule 40 – Rule 40(3)(c), (d), and Rule 40(16) – governs the committee's own file. Only Rule 12 describes a process for requesting access to court records in the custody of the Supreme Court, and Rule 40(3) and Rule 12(3) do not conflict (¶¶19–20 above).

94. As construed by the September 4 order, Rule 40 displaces Rule 12(3) entirely – its single-justice or referee examination of the record, its findings of fact and rulings of law, its public order, and its review by the full court – and substitutes nothing. So construed, Rule 40 authorizes the Supreme Court and its Clerk to deny access to records in the court's custody without any procedure, without any standard, and without any findings, in violation of the First Amendment right of access, which may be overridden only on the basis of specific findings, and of the Due Process Clause of the Fourteenth Amendment.

95. In the alternative, if Rule 40 is a rule governing access to records in the custody of the Supreme Court, it is unconstitutionally vague, on its face and

as applied to Plaintiff's Petition, in violation of the Due Process Clause of the Fourteenth Amendment: it fails to give a person of ordinary intelligence fair notice of what procedure, if any, governs a request for such records, of what standard governs its decision, of who decides it, and of whether any decision will be accompanied by findings or be subject to review; and it is so standardless that it authorizes and encourages arbitrary application, as the events of August 24, September 4 and September 10, 2026 demonstrate.

96. Plaintiff seeks a declaration that Rule 40 does not govern, and cannot constitutionally be construed to govern, a request for access to records in the custody of the New Hampshire Supreme Court so as to displace the procedure and findings that Rule 12(3) and the First Amendment require; in the alternative, a declaration that Rule 40, as a rule governing such access, is void for vagueness on its face and as applied; and prospective injunctive relief, to the extent 42 U.S.C. § 1983 permits, restraining Defendants from denying a request for access to records in the custody of the Supreme Court without a written decision containing the findings the First Amendment requires.

**COUNT FIVE**

*Violation of Part I, Article 8 of the New Hampshire Constitution*

97. Plaintiff repeats and re-alleges paragraphs 1 through 96 above.

98. The records of Case Nos. JD-2026-0001 and JD-2026-0003, any response filed in opposition to the Petition, and the docket sheet of Case No. JD-2026-0004 are court records within the meaning of Part I, Article 8, *In re Union Leader Corp.*, 147 N.H. 603 (2002), as the Judicial Branch itself acknowledged on August 24, 2026.

99. Withholding those records from Plaintiff without any determination that a sufficiently compelling interest outweighs the public's right of access, without specific findings, and without consideration of reasonable alternatives to nondisclosure, unreasonably restricts the public's right of access in violation of Part I, Article 8. *Associated Press v. State*, 153 N.H. at 124–29.

100. Plaintiff seeks declaratory relief so finding and corresponding injunctive relief.

## CONCLUSION

The New Hampshire Supreme Court told Plaintiff it would decide whether Plaintiff could see whatever was filed against the Petition; it never did. The Judicial Branch told the press the records were court records to be sought under Rule 12; the court then said Rule 12 was not relevant, without identifying any conflict between the rules or any language in Rule 40 that governs its own records. The Clerk then refused a docket sheet to "any non-party" without citing any rule at all. A member of the public who follows the only procedure the rules provide, and is met with undisclosed opposition, an order without findings, and a rule that says nothing about the records sought, has been denied the access to court records, and the process, that the First and Fourteenth Amendments and Part I, Article 8 guarantee. Plaintiff asks this Court to say so, and to require that the records be produced or, at the least, that their withholding be decided with the findings the Constitution requires.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A) Order Defendant Gudas, as Clerk and custodian of the records of the New Hampshire Supreme Court, to provide to Plaintiff any response filed with the Supreme Court in opposition to Plaintiff's Rule 12(3) petition in Case Nos. JD-2026-0001 and JD-2026-0003, in full or with such redactions as are supported by findings; or, in the alternative, order that a written determination issue stating whether any response was filed, what if anything is withheld, the interest served by withholding it, and the findings supporting that determination;

B) Order Defendant Gudas, as Clerk, to provide to Plaintiff the docket sheet of New Hampshire Supreme Court Case No. JD-2026-0004 or, if any order sealing it exists, to identify that order and provide the docket sheet with only such redactions as that order, supported by findings, requires;

C) Declare that the Due Process Clause of the Fourteenth Amendment requires that a petitioner under New Hampshire Supreme Court Rule 12(3) be provided any submission opposing the petition, in full or in redacted form, or at minimum a statement that a submission was made and of what was withheld and why, together with a written decision containing findings;

D) Declare that New Hampshire Supreme Court Rule 40 does not govern, and cannot constitutionally be construed to govern, a request for access to records in the custody of the New Hampshire Supreme Court so as to displace the procedure and findings that Rule 12(3) and the First Amendment require;

E) In the alternative to D), declare that New Hampshire Supreme Court Rule 40, as a rule governing access to records in the custody of the New Hampshire Supreme Court, is unconstitutionally vague on its face and as applied to Plaintiff's petition under the Due Process Clause of the Fourteenth Amendment;

F) Enjoin Defendants, their employees, agents and successors in office, from denying a request for access to records in the custody of the New Hampshire Supreme Court – including a request for a docket sheet – without a written decision containing the findings the First Amendment requires, such injunctive relief to issue against any Defendant acting in a judicial capacity only to the extent 42 U.S.C. § 1983 permits;

G) Declare that the withholding of the records described in A) and B) without findings violates Part I, Article 8 of the New Hampshire Constitution, and grant corresponding relief;

H) Award Plaintiff reasonable costs of suit and other expenses under 42 U.S.C. § 1988; and

I) Award such other relief as is just and equitable.

**JURY TRIAL DEMAND**

101. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

DANA ALBRECHT
*Pro Se*
131 D.W. Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

Dated: September 11, 2026